G. D. BATEN, Appellant,

v.

Arthur SMART et al., Appellees.

No. 6063.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 20, 1956.

Rehearing Denied Nov. 28, 1956.

Gordon D. Baten, M. H. Oldham, Beaumont, for appellant.

E. E. Davis, Dayton, for appellees.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Newton County in a suit brought by the appellant G. D. Baten against the appellees Arthur Smart, et. al., involving the removal of a house by Smart from land owned by Baten. The case was tried to the court without a jury and no judgment was rendered during the term of court at which it was tried. At a subsequent term of court the parties stipulated that the case could be submitted to the court on the evidence adduced at the trial in the former term, and the court rendered judgment February 3, 1956, that the appellant Baten, as plaintiff in the trial court, take nothing by his suit. Findings of fact and conclusions of law were filed in the trial court at the request of the appellant for such findings and conclusions and the appeal was duly perfected to this court for a review of the judgment.

Before stating or considering appellant's points on appeal, we find it necessary to state a summary of the pleadings, various proceedings, admitted facts and conflicting evidence.

In November, 1941, Mrs. Baten, mother of the appellant G. D. Baten, was the administratrix of the estate of Thomas J. Baten, deceased. The land involved in this suit was a part of the S. L. Fuller Survey in Newton County and it was a part of the property being administered by her in such capacity. Mr. Baten, the appellant, was the man in charge of these premises, taking care of the details of the management for his mother. In November, 1941, Arthur Smart, one of the appellees, and his wife and children moved on to the land, with permission, as a tenant. He agreed to pay small rentals but was usually delinquent in these payments. The house on the property was variously described in the evidence as a log house, a building partly made from logs, and a shack in a bad state of repair. In March, 1947, appellant G. D. Baten acquired title from his mother and sister to the land in the said Fuller Survey, his title being to the surface and a portion of the minerals. Arthur Smart was on the land from 1941 until 1949. Shortly after Mr. Baten acquired title, Smart being still delinquent in his rent, he ordered Smart to move off the land. Smart moved off the land all right but he moved a house with him, and therein sprouted the seeds of this controversy and litigation.

Some time between this period of 1941 to 1949, Smart built on the Baten land a house in which he lived. He testified that with the consent of Mr. Baten he built an entirely separate house from the old one which he found there when he moved on the land, and that he built it from lumber and materials which were largely to be found in the house which Smart owned over on another piece of land nearby and partly from materials which he bought in the

nearby town of Wiergate. Smart's wife testified that most of the lumber and materials came from a house which she owned. Mr. Baten contends, and so testified, that no new house was built but additions and improvements were added to his house, the one originally on the land when Smart moved on the property. Mr. Baten lives, and did at the time, in Beaumont, some distance away from the land involved and made infrequent trips to view the property. He testified that in the course of his infrequent visits he did not see a new house being built, but he did notice what appeared to him to be additions and improvements to the old one. He denied he gave Smart permission to build a new house or to move any property from his land to that of another. Smart testified that he constructed the new domicile with the consent of Mr. Baten for Smart's own use and benefit, with the understanding that it was to be Smart's property. The intimation is to be found in his naive testimony that when Mr. Baten ordered him to move off the land he thought he had a right to move the house off the land when he himself moved off. At any rate, the next time Mr. Baten went back to visit his property and to see whether Smart had vacated the premises, he discovered his premises completely vacated. There was nothing remaining on the land but a utility pole and a place where there had been a well. He found a few pieces of scrap lumber but no semblance of a building or a fence. He thereupon hunted up Smart, who had his house and family down on another piece of land a few hundred yards away, an asked him about getting off his land. He was told that they had been off his land "since last November." This was in April, 1950. He demanded the return of his house and then filed suit for his house and for an order from the court permitting him to move it back on his land and for damages. The original petition was filed in October, 1951.

In February, 1955, appellant Baten filed his first amended original petition, alleging that Smart, et al., had, without permission of Baten, disguised the house by various additions and arrangement and had moved his house off his land. In the alternative he pleaded that if Smart, et al., had removed or destroyed the old house on his land and replaced it with another which he moved to another tract of land, then he alleged that Smart had no right or authority to destroy, remove or replace such house with any other house; he sued for title and possession of the house, damages and for a restraining order to prevent the appellees from interfering with him in the removal of the house.

The appellees answered the original petition and later filed their first amended original answer in February, 1952, and appellee Arthur Smart filed an amended answer in September, 1953. Such answer pleaded a general denial, special denial that he had committed any wrongful act against the appellant or his property, and further specially pleaded that with the permission of Mr. Baten, while he was Mr. Baten's tenant, he built a house on the land out of lumber and materials of his own and with his own labor, with the consent and knowledge of Mr. Baten, for Smart's use and benefit and with the understanding between them that said building would belong to and remain the property of Smart, and that he would be privileged to move the building off the land; that when Mr. Baten ordered him to vacate the land he removed the building, with Baten's consent, and located it on land that belonged to Smart and that he ever since that time had occupied such house and land as his home.

In May, 1952, the appellees Smart, et al., filed a request for admissions of fact. Mr. Baten answered with his response to such request for admissions of fact filed in June, 1952. These replies for request for admissions served only to join issues of fact in regard to what Smart did in building the house on Baten's land and moving it off, and whether or not these things were done with the knowledge and consent of Baten.

The trial court's findings of fact and conclusions of law were as follows:

"1.

"I find that prior to March 13, 1947, the mother of plaintiff, C. D. Baten, was the owner of the S. L. Fuller Survey, Abst. 815, situated in Newton County, Texas; and that on or about said date the plaintiff acquired the fee simple title to said Fuller Survey, save some mineral interest not necessary to notice here.

"2.

"For several years prior to March 13, 1947, there was an old and delapidated log house consisting of two or three rooms, known as the Frank Bryant house, located on the Fuller Survey; in connection with this house, a small acreage of the land was enclosed by a rail fence. This fence was old and hardly sufficient to keep livestock out of the enclosed premises.

"3.

"At some time prior to March 13, 1947, while the mother of the plaintiff owned the Fuller land and premises, the defendants Arthur Smart and wife, with the consent and permission of the then owner, moved into the old log house as the tenant of plaintiff's mother. Under this tenancy agreement between the parties, the defendants would sometimes pay the monthly rental, but on a number of occasions they failed to pay the rental as it accrued.

"4.

"I find that when the plaintiff acquired title to the land and premises on or about March 13, 1947, he made a tenancy agreement with the defendants Smart and wife to continue their residence in the log house and upon the land, under which agreement the defendants were to pay plaintiff a monthly rental of three dollars per month. These payments were sometimes met, but occasionally there was a default in payment of this rental; it appears that this condition existed until the defendants moved from the land.

"5.

"The testimony of the plaintiff and the defendant as to the length of time covered by the tenancy agreement is in sharp conflict—the plaintiff claiming that the tenancy could be terminated at will, and the defendant claiming that it would continue so long as the defendant elected to remain on the premises; under the facts developed upon the trial, I find that it was a tenancy at will.

"6.

"I find that during the early part of the occupancy by the defendants they, at their own expense, made some minor repairs upon the house in order to bring about better living conditions.

"7.

"I find that the old and delapidated log house became so badly in need of major repairs that it was no longer desirable and suitable for living quarters, thereby making it necessary for the defendants to provide other quarters for their living comforts.

"8.

"I find that the defendants Smart and wife tore down their former house and home situated a mile or more from the Fuller place, and with the salvaged lumber and material and lumber and material purchased by them at the mill, and elsewhere, erected a four or five room house upon the plaintiff's land some fifty feet in front of the old log house abandoned by them; that all the material used in the erection of the new house on plaintiff's land was fully paid for by defendants; that the said new house was erected with the knowledge and consent of the plaintiff; and that no material entering into the new house was taken from the old log building.

"9.

"I further find that the defendants had no idea of enhancing the value of plaintiff's

land; that they were seeking a home where the husband would be closer to his sawmill work; and that they had no intention of leaving the house erected by them on the land of the plaintiff if it should become necessary for them to move away. I further find that they believed that the house erected by them would remain their personal property because it was their understanding of the tenancy agreement that they could stay upon the land and premises just as long as they desired to do so.

"10.

"I further find that the defendants became delinquent in payment of the rental, and that the plaintiff declared the contract terminated and requested them to leave, and that sometime in November, 1949, the defendants moved the house erected by them on plaintiff's land to a site and upon land owned or partially owned by them.

"Conclusions of Law

█ "I conclude as a matter of law that since the defendants erected the house upon plaintiff's land at their own expense and with the intention on their part that it should never become annexed to the realty, that judgment herein should be rendered for the defendants, pursuant to the holding by the Supreme Court of Texas in the case of O'Neil v. Quilter reported at [111 Tex. 345] 234 S.W. 528."

In September, 1953, appellant Baten filed a motion for summary judgment on the pleadings, alleging that there was no issue of fact for the court to pass upon except to the extent of his damages and contended that he was entitled to judgment in his favor. The court denied such motion. The case went to trial in February, 1954, before the court without a jury and no judgment was rendered at that term of court. At a later term of court the parties entered into a stipulation by which it was agreed that the case would be submitted on the evidence and pleadings, and on excep-

tions and objections that were adduced in the previous trial. The judgment that the appellant take nothing by his suit was rendered and entered February 3, 1956.

The appellant brings his appeal under the following 12 points of error:

"(1) The court erred in not striking from the record and in considering the testimony of Calvin Smith, after being duly *appraised* of the incompetence of said Smith to testify to the facts he did testify to, and objections and motion to strike being duly and timely made.

"(2) The court erred in considering and not striking from the record the test*a*mony of Wiley Newton, when same was duly and timely objected to and motion timely made to strike.

"(3) The court erred in not granting the plaintiff's motion for summary judgment though timely filed and insisted upon.

"(4) The court erred in not allowing the plaintiff's trial amendment, though duly and timely filed and insisted upon.

"(5) The court erred in finding that the plaintiff's mother was the owner of the S. L. Fuller Survey prior to Mar. 13, 1947.

"(6) The court erred in finding that Arthur Smart and wife were tenants of plaintiff's mother.

"(7) The court erred in finding that "the new" house was erected with the knowledge and consent of the plaintiff.

"(8) The court erred in finding that the defendants were seeking a home where the husband would be closer to his sawmill work.

"(9) The court erred in finding that the tenants had no intention of leaving the house erected by them on the plaintiff's land if it should become necessary for them to move away.

"(10) The court erred in finding that 'They believed that the house erected by them would remain their personal property

because it was their understanding of the tenancy agreement that they could stay upon the premises just as long as they desired to do so.'

"(11) The court erred in holding, as matter of law, that judgment should be rendered for the defendants and plaintiff should take nothing by his suit.

"(12) The court erred in not rendering judgment for the plaintiff and against the defendants."

Appellant's points 1 and 2 present no error. They say the court erred in not striking from the record and in considering the testimony of the two witnesses of the appellees, Calvin Smith and Wylie Newton. After the witness Newton had testified at length as to what he knew about Arthur Smart rebuilding the old building out on the land involved and building another building, counsel for the appellant made the following request, "We ask that that testimony be stricken in regard to what happened to that house and the rebuilding of that house out of that material." The court's ruling was "yes, the Court will take care of it." A few questions ensued, then the witness was asked "So you don't know whether he combined the old house into the new one or built a new one or just what he did of your own knowledge?" The answer was "No, I don't." Counsel for appellant then moved the court, "We ask that the testimony he gave in that regard be stricken." The ruling by the court was, "Yes, the Court will take care of that, gentlemen." Later on redirect examination by appellees' counsel, the witness said "Well, I was never there—I went by Arthur's one time just after he moved that —his house up there." Counsel for appellant objected to his statement, "Just after he moved his house to the Baten land." The ruling by the court was "yes". Thereafter throughout the other testimony of this witness the court sustained objections of the appellant to any statement by the witness that Smart had moved a house. The court

admonished the witness, "Don't testify about the hearsay that you don't know; just what you know, please, Sir, and we will get along fine." It appears that as to witness Newton's testimony, the court sustained all the objections made by the appellant in the course of his testimony. As to the witness Smith, he testified that he had lived in Wiergate 30 years, that he had known Arthur Smart 25 years or longer; was in the grocery business and sold, besides groceries, roofing and hardware, farm implements and dry goods and brick siding. He testified that he knew the house where Smart lived before he moved on the old Baten place, that it was an old box house, that Smart tore it down and built it on Mr. Baten's place; that he, the witness, sold him the brick siding and also the roofing and the windows; that he did not build it around the old log house, that he was living in the old log house; that later Smart tore down the old log house, or started to, and kind of built some hog pens and a barn—tried to build it. This witness was asked the question, "When he built it on the Baten place, do you know who he was building it for?" Objection was made by counsel for appellant, "That calls for a legal conclusion, an attempt to recite the mind of another man, and could be based on nothing but hearsay." The court ruled, "If he knows, I can't see why he can't testify. If you don't know, don't testify." The witness answered "He was building it for himself." Objection was again made that the question calls for personal information that could not be within the knowledge of the witness unless that knowledge came from the man building the house himself; that it could not be anything but hearsay; that it called for a legal conclusion from this witness. The witness then added, "Well, I know that was Arthur's house. He paid me for the material that went in it." Appellant objected "to that source of information. We object to that for the same reason and ask that it be stricken from the record." His objection was overruled.

Later, on cross-examination, the witness testified that he got his information as to who Smart was building the house for "from him and also from the material I sold him that went into the house." Appellant thereupon moved the court that since his information came from Smart, his testimony was hearsay and was also partly based on his conclusions of what he saw. Appellant moved that "it be stricken." The court overruled the motion to strike. Later when the witness admitted that the source of his information that where the lumber came from to go into the house Arthur was building was Arthur Smart himself, appellant moved the court to strike out all of the witness' testimony he gave about Arthur tearing down the old house and moving it over to the Baten place. The court agreed, ruling "yes, I think so, gentlemen, the court will take care of that." It is evident from the rulings of the court that in all except one instance the appellant's objections were sustained and the objectionable testimony stricken. In the one instance which is the exception, the court later sustained the objection and motion to strike the testimony previously admitted. It could not be said that all of the testimony of this witness was improper. Some of it was in corroboration of testimony of Smart, himself, and it will be presumed by a reviewing court that the trial court considered only the evidence properly admitted in arriving at his judgment, when a case is tried before the court without a jury. The appellant, under these two points, makes the further argument that the testimony of these witnesses was evasive and therefore not worthy of belief. The function of the trial court here was to pass upon the weight and value of the testimony and the credibility of the witnesses, and it is not for us to say which witness he should have believed in arriving at his judgment. The record does not show that the court wrongfully overruled appellant's motion to strike testimony. These points are overruled.

The appellant's motion for summary judgment on the pleadings was properly denied by the trial court. The appellees at that time had on file in the papers of the case an answer which raised a fact issue with regard to circumstances under which Smart built his house on the Baten land, and particularly raised the issue that he had done so with Baten's consent, with the understanding that the house would remain his property, and also raised the issue as to Baten's consent that he move the house off the land. Since the pleadings in the case presented an issue of fact, the court was without authority to enter a summary judgment. Point 3 is overruled.

Under his point 4, appellant complains of the trial court's refusal, in the course of the trial, to permit him to file a trial amendment. By such trial amendment he sought to plead, in addition to his other pleadings, and in the alternative, that if Smart did build a new or different house on Baten's land, then such house was affixed to the land and became a part of the realty; that the house was constructed without his knowledge and consent and without any agreement on his part to permit its removal. He further alleged the value of the house and the damages for its removal. The appellant contends that he was harmed by the trial court's refusal to permit the filing of this trial amendment, since by its filing he would have had pleadings in the record combatting and resisting the appellees' theory of the case. Appellees, on the other hand, say that the question of permitting the filing of the trial amendment must be left largely to the discretion of the trial court. It appears that both parties in their briefs overlooked the fact that the trial amendment was offered during the trial of the case in February, 1954, and that another trial of the case was had at a subsequent term in February, 1956. We note that almost two years intervened from the time the trial amendment was offered and the trial of the case which resulted in the judgment appealed from. We find

nothing in the record showing any attempt by appellant to amend his pleadings by incorporating into an amended petition the matters set forth in his proffered trial amendment. Appellant will not be heard now to complain of the trial court's refusal to allow the trial amendment, and no error is presented by this point.

The appellant's points 5, 6, 7, 8, 9, and 10 present complaints of the trial court's various findings of fact. As to points 5 and 6, we find no reversible error in the court's findings that the appellant's mother was the owner of the land prior to March 13, 1947, and that Smart and his wife were her tenants. The appellant himself was the person in charge of the premises and whatever dealings Smart had after he went on the land as a tenant were with the appellant himself, acting either for himself or as his mother's representative. There seems to be no question that Smart was a tenant at will.

As to points 7, 8, 9 and 10, the findings of fact complained of are supported by the evidence as a whole. Smart's own testimony and that of his wife were in conflict in some respects, but if the trial court gave full credence to the testimony of Smart himself (and it appears that he did so) then the court was warranted in finding from all of the evidence that Smart built an entirely new house on Baten's land, that he built it for his own use and benefit with the implied consent of the appellant, and that he had no intention of building the house as an addition to the realty owned by Mr. Baten. It must be conceded that the trial court as a trier of the facts disregarded almost in its entirety the appellant's testimony about the building and moving of the house. It is the function, however, of the trier of the facts to determine the weight and sufficiency of the evidence, and we cannot substitute our judgment of the facts for that of the trial court. These fact findings find support in the evidence and the appellant's points Nos. 6 to 10, inclusive, are overruled.

Under points 11 and 12 the appellant contends that the court erred in his conclusions of law and in rendering judgment for the appellees and not rendering judgment for the appellant. In the case of O'Neil v. Quilter, 111 Tex. 345, 234 S.W. 528, by the Supreme Court, it was held that when a tenant at will built a house on his landlord's premises, the legal presumption is that it was the intention of such tenant at will not to enhance the value of the freehold, but to build it for his own use and benefit, and that it should retain its character as personalty. Under this presumption of law, therefore, the appellees Smart, et al., were not under the burden of proving the agreement and consent of the appellant that Smart should have the right to move the house off the land. They had in their favor the legal presumption as set forth in Judge Pierson's opinion in the above case. Under the fact findings of the trial court that Smart was a tenant at will and that he built the new house for his own use and benefit, with his own labor, out of materials provided by himself, then the burden was upon the appellant to overcome by evidence such presumption as announced in O'Neil v. Quilter, supra. This he did not do to the satisfaction of the trier of the facts. The judgment that the appellant take nothing by his suit was therefore proper, under the facts as found by the trial court, and these points are overruled.

The judgment of the trial court is affirmed.